### HYNES v. BRIGGS et al.

*(Circuit Court, E. D. Arkansas. January, 1890.)*

1. CONSTITUTIONAL LAW—DRUMMERS' TAX—INTERSTATE COMMERCE.
   An agent of a foreign corporation, selling ranges which have been previously shipped into the state, and there stored, cannot avoid the payment of the license required of stove-range agents by Mansf. Dig. Ark. § 5589, on the ground that he is engaged in interstate commerce.
2. SAME—OCCUPATION TAX.
   As under the constitution of Arkansas, as interpreted by the supreme court of the state, no tax can be imposed upon callings and pursuits for the purpose of raising a state revenue, Mansf. Dig. Ark. § 5589, requiring a certain sum to be levied "as a state tax" upon "stove-range agents doing business in this state for the term of one year or less," is unconstitutional.
3. FEDERAL COURTS—JURISDICTIONAL AMOUNT—FALSE IMPRISONMENT.
   On complaint for false imprisonment, with damages laid at $10,000, it cannot be said that the amount in controversy is less than $2,000, and not within the jurisdiction of the circuit court, though plaintiff was deprived of his liberty for only 15 minutes, for refusal to pay a license demanded of him as a stove-range agent.

At Law. Action for false imprisonment.

This is an action by M. J. Hynes against W. H. Briggs and J. H. Ferguson, for false imprisonment, and is submitted upon the following agreed statement of facts:

"Defendant Briggs is, and was at the date hereinafter mentioned, the sheriff of Howard county, Ark., and defendant Ferguson a justice of the peace in and for said county. Plaintiff is and was the general agent of the Wrought Iron Range Company, a foreign corporation duly incorporated under the laws of the state of Missouri, with headquarters in the city of St. Louis, Mo. Prior to the date of the filing of the affidavit set out in defendants' answer, plaintiff had been engaged in the sale and delivery of stove ranges in Howard county, Ark., as agent for the Wrought Iron Range Company, in the following manner: The stove ranges were shipped to Nashville, Ark., by the car-load, consigned to the Wrought Iron Range Company, and then stored by plaintiff in the railroad depot, which had been rented by plaintiff for that purpose. Plaintiff had many subagents under him in Howard and surrounding counties. Plaintiff sold stove ranges to various parties in Howard county, sometimes

upon written orders, and sometimes without any order, and delivered the ranges out of the stock on hand in the depot. Plaintiff's subagent, in one instance, is alleged to have sold the sample range from his wagon, and then and there delivered it to the purchaser. There were five car-loads of stove ranges. There were five separate car-loads of ranges shipped to Nashville from St. Louis, Mo., seventy-two to the car-load, and each car-load consigned to the Wrought Iron Range Company. Some orders were received for ranges before they were shipped, but these orders did not cover the number of ranges shipped. Plaintiff can give no estimate of the number of orders received before the shipment of the ranges. Defendant Briggs, as sheriff of Howard county, demanded of plaintiff his license to do business as agent for the stove-range company about two weeks before the arrest was made. He declined to pay any license. Defendant Briggs then consulted with W. M. Green, the prosecuting attorney for the eighth judicial circuit, including Howard county, as to his duty in the premises. Mr. Green advised the defendant Briggs to make complaint against plaintiff and his subagents for doing business as agent for the stove-range company without first procuring license, and prepared the affidavit which was made by defendant Briggs, and filed before defendant Ferguson, as set up in defendants' answer. Upon this affidavit a warrant was issued by defendant Ferguson, and placed in the hands of R. F. Tilson, deputy town marshal of Nashville, and by him executed. Plaintiff was arrested under this warrant by said deputy-marshal, and given an opportunity to make his bond, which was fixed by the defendant Ferguson at $250. This bond was made in about fifteen minutes, and plaintiff was released from custody forthwith. Plaintiff was not restrained of his liberty other than this. The deputy-marshal accompanied him while he procured his bond. With reference to the sale and delivery of the sample range, E. F. Moles and G. D. Hodge will both testify that J. E. Keener, a subagent under plaintiff, told them, before the warrant was issued, that he (Keener) made more sales than any of the rest of the boys; that he had even sold the sample range off of his wagon and delivered it. Plaintiff denies that he ever sold, or authorized the sale of, a single sample range from the wagon. Plaintiff further says that until the ranges were sold and delivered they remained the property of the Wrought Iron Range Company, and plaintiff had no interest in them except as agent to sell and deliver. Plaintiff alleges that his subagents sold the ranges, and took the purchasers' notes therefor, subject to the approval of plaintiff. If plaintiff saw fit to confirm the sale, he delivered to the purchaser the range from his stock at Nashville, and took the purchaser's receipt therefor. One of the blanks is hereto attached."

*U. M. & G. B. Rose,* for plaintiff.
*Scott & Jones,* for defendants.

CALDWELL, J., (*after stating the facts as above.*) The plaintiff was agent in this state for the Wrought Iron Range Company, a Missouri corporation. Section 5589, Mansf. Dig., provides that—

"There shall be levied and collected, as a state tax, the sum of one hundred dollars upon each and every clock peddler, each and every agent for the sale of lightning rods, and stove-range agents, doing business in this state for the term of one year or less."

The plaintiff refused to pay the state tax mentioned in this section; and thereupon the defendants instituted a prosecution against him under section 5594, Mansf. Dig., and arrested and detained him as set out in the agreed statement of facts. The plaintiff claims that his arrest was

illegal upon the ground that the act of the legislature quoted is void because it conflicts with that clause of the constitution of the United States which confers on congress the power to regulate commerce between the states, and that it is also repugnant to the constitution of the state. The supreme court of the United States, in recent cases, have defined what is and what is not "interstate commerce" with considerable precision. It is settled by the decisions of that court that the sale of goods which are in another state at the time of the sale, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce. A tax on the sale of such goods before they are brought into the state is a tax on interstate commerce itself; and a license or privilege tax for negotiating the sale in one state of goods in another is, in effect, a tax on the goods sold, and a state cannot levy a tax on goods not within her jurisdiction. *Robbins* v. *Taxing Dist.*, 120 U. S. 489, 7 Sup. Ct. Rep. 592; *Brown* v. *Houston*, 114 U. S. 622, 5 Sup. Ct. Rep. 1091; *Woodruff* v. *Parham*, 8 Wall. 123; *Cook* v. *Pennsylvania*, 97 U. S. 566; *Welton* v. *Missouri*, 91 U. S. 275. But when goods are sent from one state to another for sale they become a part of the general property of the state into which they are introduced, and amenable to its laws. Id. There is nothing in the constitution of the United States which prohibits a state from levying any tax it sees proper on goods within its jurisdiction, and which have become a part of its general property. The stove ranges which the plaintiff was engaged in selling were shipped, by the corporation which manufactured and owned them, from the state of Missouri, where they were manufactured, into this state, consigned to itself. The ranges were not sold before they were shipped. They were shipped into the state to be thereafter sold; and they were received by its agent, the plaintiff, and placed in the store-house for future sale. It was from the ranges so stored in this state that the plaintiff made his sales, and filled his orders. He was not a drummer taking orders for ranges then out of the state, and to be thereafter shipped into the state. He was selling the goods then in the state, as other local merchants do. He was not, therefore, engaged in interstate commerce, and cannot claim immunity from the tax imposed on stove-range agents on that ground.

The validity of the statute under the constitution of the state remains to be considered. It is the settled law of this state that the legislature can authorize counties and towns to tax all callings and pursuits, but that no such tax can be imposed for the purpose of raising state revenue. *McGehee* v. *Mathis*, 21 Ark. 40; *Straub* v. *Gordon*, 27 Ark. 625; *City of Little Rock* v. *Barton*, 33 Ark. 442; *City of Little Rock* v. *Board*, 42 Ark. 160; *Baker* v. *State*, 44 Ark. 134. The tax imposed on stove-range agents is "a state tax." The plaintiff was not a broker or peddler, and was not proceeded against as such. It is true that he was acting as agent for a corporation of another state; but the act does not purport to impose, and was not intended to impose, the tax on foreign corporations or their agents for the privilege of doing business in the state. It is competent for the legislature to declare on what terms foreign corporations may do business in the state, but the statute under consideration was not an act for

that purpose. To make it such would be judicial legislation. The property of the stove-range company in this state is liable to taxation like all other property in the state. The taxation of stove-range companies, as corporations, for the privilege of doing business in the state, or for any other purpose, is not "specifically provided for" outside of the provision of section 17 of the act of March 28, 1887, amendatory of section 5645, Mansf. Dig. It results that the act imposing a state tax on stove-range agents, who are not hawkers or peddlers, for selling the goods of their principals in this state, is repugnant to the constitution of the state, as construed by the supreme court of the state, and void.

The defendants challenge the jurisdiction of the court on the ground that from the agreed statement of facts it sufficiently appears that the amount in controversy does not exceed $2,000, and that the plaintiff must have known his damages were much less than that sum when he instituted his suit. The damages are laid in the complaint at $10,000. It is by no means certain that the plaintiff did not feel that he had been greatly outraged, and that he ought to recover heavy damages from the persons who arrested him, and restrained him of his liberty, without the sanction of any law. He was a business man; and to be arrested and restrained of his liberty, for ever so short a time, on a charge of violating the criminal laws of the state in the conduct of his business, was well calculated to excite his indignation, and impress him with the honest belief that he was entitled to exemplary damages. Nothing can be more uncertain than the damages that can be awarded by a jury in an action for false imprisonment. The assessment of damages is not measured, as a rule, by the length of imprisonment. The rule of action, and the possible results, in this class of cases was well expressed by Lord Temple in a speech in the house of lords, when he said:

"That noble and learned lord [Camden] has said, I believe, on other occasions, and he has said well, the price of one hour's English liberty none but an English jury could estimate, and juries, under his guidance, have put a very high value upon it, in the case of the meanest of our fellow-subjects, when oppressed by the servants of the state." 6 Campb. Lives Ld. Ch. 384.

No court would be justified in saying that an American jury could not rightfully award more than $2,000 damages to a citizen who had been illegally deprived of his liberty, for 15 minutes, by a public officer acting without the sanction of any law. The doctrine of *Maxwell* v. *Railroad Co.*, 34 Fed. Rep. 286, can have no application to a case like this.