Sam **GIANCANA**, Plaintiff-Appellee,

v.

Marlin W. **JOHNSON**, Agent in Charge, Chicago Office of the Federal Bureau of Investigation, Defendant-Appellant.

No. 14272.

United States Court of Appeals Seventh Circuit.

June 30, 1964.

Swygert, Circuit Judge, dissented.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., Frank E. McDonald, Asst. U. S. Atty., James P. O'Brien, U. S. Atty., John Peter Lulinski, Thomas W. James, Asst. U. S. Attys., of counsel, for appellant.

George N. Leighton, Chicago, Ill., for appellee.

Before SCHNACKENBERG, KILEY and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

The question is whether the district court had jurisdiction to entertain this "action to procure and protect the civil rights of plaintiff," growing out of alleged surveillance of plaintiff, his home and his recreation, by FBI agents under defendant's supervision and direction. We think the record shows the court did not have jurisdiction.

The Complaint,[1] as amended, was based upon claim of a "federal question," 28 U.S.C. § 1331,[2] arising under the Fourth [3] and Fifth [4] Amendments to the United States Constitution; and a civil rights violation under § 1343(4).[5] The district court denied defendant's motion to dismiss which challenged the complaint on jurisdictional grounds.

The district court, on the "sworn amended complaint, affidavits and evidence of the plaintiff," found that plaintiff's constitutional rights to privacy, personal liberty and freedom were violated by the surveillance; and that unless defendant was restrained plaintiff would suffer irreparable injury. The court granted a preliminary injunction. We stayed the effect of the injunction, pending appeal. Giancana v. Hoover, 322 F. 2d 789 (7th Cir. 1963).

District courts are courts of limited jurisdiction, possessing only the jurisdiction that Congress has conferred upon them by statute. Klein v. Lee, 254 F.2d 188, 190 (7th Cir. 1958), citing

1. The original complaint's caption included § 1346(a) (2) and (b), but this reference was omitted from the amended complaint.

2. 28 U.S.C. § 1331 provides in pertinent part:
   "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000 * * * and arises under the Constitution, laws, or treaties of the United States."

3. The Fourth Amendment to the United States Constitution provides:
   "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

4. The Fifth Amendment to the United States Constitution provides in pertinent part:
   "No person shall be * * * deprived of life, liberty, or property, without due process of law * * *."

5. 28 U.S.C. § 1343 provides in pertinent part:
   "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   *    *    *    *    *
   "(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

Lockerty v. Phillips, 319 U.S. 182, 63 S. Ct. 1019, 87 L.Ed. 1339 (1943). And the jurisdiction conferred upon federal courts to entertain suits arising under the Constitution or laws of the United States has been "narrowly limited." Hague v. Committee for Industrial Organization, 307 U.S. 496, 507, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). Furthermore, this court has the duty to satisfy itself of the jurisdiction of the district court. Jackson v. Kuhn, 254 F.2d 555, 560 (8th Cir. 1958).

The vital question depends on whether the record shows that "the matter in controversy exceeds the sum or value of $10,-000 * * *" so as to give the district court jurisdiction under 28 U.S.C. § 1331.

■ Courts may not treat as a mere technicality the jurisdictional amount essential to the "federal question" jurisdiction, even in this case where there is an allegedly unwarranted invasion of plaintiff's privacy. The showing of that essential is not a mere matter of form, but is a necessary element. Congress in § 1331 expressed the "federal question" jurisdiction in plain words. The district courts and suitors are bound by the words expressed. Congress could have withheld the jurisdiction entirely, as it did from 1789 to 1875. Or it could have given jurisdiction over suits arising "under the Constitution, laws, or treaties of the United States" simply. But it limited the jurisdiction by including the element of the sum or value of the matter in controversy, and the Congressional will is that unless that sum or value is shown there is no "federal question" presented and no jurisdiction.

■ Neither may a party invoke the district court's jurisdiction by treating that element as though not essential; nor choose not to amend his complaint or otherwise show, as plaintiff did here, that the jurisdictional sum or value is in controversy, thus opposing his will to the Congressional will.

In Jackson v. Kuhn, 254 F.2d 555, 556, 560 (8th Cir. 1958), the Eighth Circuit affirmed the district court's dismissal of a diversity suit to restrain United States Army officers "from * * * policing, occupying or interfering with the property or the students of Little Rock Central High School * * *" because there was "no allegation in the complaint that the value of the matter in controversy exceeds $3,000," [6] and no facts stated from which the requisite pecuniary value could be inferred. And the Fifth Circuit in Walton v. City of Atlanta, 180 F. 2d 143, 144 (5th Cir. 1950), on its own motion in a "federal question" suit found federal jurisdiction lacking because "[f]rom the allegations of the complaint, it does not appear that the amount in controversy exceeds three thousand dollars" so as to confer jurisdiction under § 1331.

Plaintiff concedes that Jackson v. Kuhn, 254 F.2d 555 (8th Cir. 1958), and Van Buskirk v. Wilkinson, 216 F.2d 735 (9th Cir. 1954), support defendant's contention that the district court did not have jurisdiction because the jurisdictional amount is not expressly alleged in the complaint. Here the complaint makes no express allegation of the essential jurisdictional sum or value. Plaintiff argues, however, that the jurisdictional sum or value should be inferred from the allegations, supported by unimpeached affidavits. But there are no facts from which that necessary element can be inferred. If, as plaintiff contends, the sum or value cannot be alleged because of the priceless rights involved, how can this court infer that essential element? And there is no finding of the essential sum or value and no evidence on which to base a finding.

Congress had a reason for setting the minimum jurisdictional sum or value in limiting the jurisdiction of the district court.[7] (It surely knew of the priceless

6. The jurisdictional amount was increased to $10,000 in 1958. 72 Stat. 415.

7. The purpose for setting the jurisdictional amount at $10,000 in 1958 was ex-

nature of liberty and privacy when it required a showing of that element.) And placing the burden of estimating the value of one's claim upon him who sues is not unusual. If, for instance, plaintiff had chosen to sue for damages under § 1331, as plaintiff did in Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), for alleged violation of his Fourth and Fifth Amendment right of privacy—the basic claim here—he would have had to estimate the value of his claim. "Plaintiff is master of his claim," [8] and it is no answer to failure to bring his claim within the ʼjurisdictional prerequisite that the value is inestimable.

█ Finally plaintiff contends that the subject matter "in controversy"—the use of his home, his personal liberty and freedom, the tortious conduct of defendant and invasion of plaintiff's private rights—is admitted by defendant's motion to dismiss, and that the substantive issue of the amount of damage awaits ultimate resolution in the trial court upon hearing of the cause on the merits. We disagree. The validity of the court's ruling must be determined as of the time it was made.

To support his argument about deferring resolution of the jurisdictional question plaintiff relies upon McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). That case does not require, in the circumstances before us, that determination of the jurisdictional issue be deferred until

plaintiff has an opportunity to furnish proof of his charges. We read McNutt, involving Indiana law regulating purchase of installment sales contracts, so far as pertinent here, to decide that if the requisite jurisdictional facts are alleged, and challenged, the plaintiff must support them by competent proof, and that in such a case an inquiry might be necessary to determine whether the facts support the allegations of jurisdiction; but that if the plaintiff fails to allege the facts prerequisite to show jurisdiction he has no standing. 298 U.S. at 189, 56 S.Ct. 780.

█ The district court erred in entertaining the suit before us because, having only the jurisdiction conferred by Congress, its jurisdiction was limited, so far as it is based upon § 1331, to controversies involving a sum or value in excess of $10,000, and plaintiff failed to allege, or otherwise show, his damage accordingly, or to allege, or otherwise show facts from which that essential jurisdictional element may be inferred.

█ The court had no jurisdiction either, of the claims under § 1343(4), the "Civil rights and elective franchises" section: "To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights * * *." Plaintiff does not allege nor show us otherwise "any Act of Congress" of whose violation he complains.[9]

---

plained in the Senate Report accompanying the bill:

"The recommendations of the Judicial Conference regarding the amount in controversy, which this committee approves, is based on the premise that the amount should be fixed at a sum of money that will make jurisdiction available in all substantial controversies where other elements of Federal jurisdiction are present. The jurisdictional amount should not be so high as to convert the Federal courts into courts of big business nor so low as to fritter away their time in the trial of petty controversies."

S.Rep. No. 1830, 85th Cong., 2d Sess. (1958), 1958 U.S.Code Cong. & Ad.News, pp. 3099, 3101.

8. Wright, Federal Courts 98 (1963).

9. Although no Act of Congress is set forth in the complaint to show jurisdiction under § 1343(4), plaintiff refers us, in his brief, to 28 U.S.C. § 1361 and 42 U.S.C. § 1985. We think plaintiff's references are insubstantial and warrant dismissal for want of jurisdiction. See Bell v. Hood, 327 U.S. 678, 682–683, 66 S.Ct. 773 (1946).

There is no merit in the contention that defendant cannot raise the question of lack of jurisdiction because he did not comply with 28 U.S.C. § 1292(b).[10] That section does not apply because the order is "otherwise appealable" under § 1292 (a) (1),[11] and this court can itself note a jurisdictional defect. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 187, 56 S.Ct. 780 (1936).

Since there was no jurisdiction, we do not reach the other points raised.

Judgment vacated and the cause remanded for proceeding not inconsistent with this opinion.

10. 28 U.S.C. § 1292(b) provides in pertinent part:

"(b) When a district judge, in making in a civil action an order *not otherwise appealable under this section*, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order * * *." (Emphasis added.)

11. 28 U.S.C. § 1292(a) provides in pertinent part:

"(a) The courts of appeals shall have jurisdiction of appeals from:

"(1) Interlocutory orders of the district courts of the United States * * * granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court * * *."

SWYGERT, Circuit Judge (dissenting).

Defendant Marlin W. Johnson, special agent in charge of the Chicago office of the Federal Bureau of Investigation, appeals from a preliminary injunction issued by the district court restraining defendant and his agents from maintaining more than one car within one block of plaintiff's home, from having more than one car at any one time following plaintiff, and directing that at least one foursome intervene between plaintiff and FBI agents when plaintiff plays golf.

The district court, following a hearing on the application for the preliminary injunction, entered findings of fact.[1]

1. The district court's findings include the following:

That plaintiff's evidence tended * * * to prove that Agents of the Federal Bureau of Investigation kept plaintiff and his home, together with his relatives, friends and associates, under constant surveillance and observation at his home twenty-four hours per day. That since the evidence of the plaintiff was not contradicted by any evidence offered by the defendant, nor were any counter-affidavits filed by the defendant, nor were the witnesses presented by the plaintiff cross-examined by the defendant, the court finds that the vehicles in and about the home of the plaintiff, Sam Giancana, from June 10, 1963 to July 15, 1963 were in the care, custody and control of Agents of the Federal Bureau of Investigation under the direction of the defendant Marlin W. Johnson; and that the Agents of the Bureau who kept plaintiff and his home under constant surveillance and observation twenty-four hours each day were likewise under the direction of the said defendant, Marlin W. Johnson.

That from June 10, 1963 to July 15, 1963 at times when the plaintiff was at his home, Agents of the Federal Bureau of Investigation followed the plaintiff wherever he went keeping him under constant observation and surveillance twenty-four hours each day.

That on one occasion Agents of the Federal Bureau of Investigation followed the plaintiff as he went about his private affairs and they said to him: "We are going to give you protection, Sam"; "Why don't you get out of town and cut all this stuff out, or get out of the Country."

That on June 30, 1963 Agents of the Federal Bureau of Investigation followed the plaintiff, Sam Giancana, and members of his family as he went about his private affairs and went to the home of Mrs. Rose Flood where plaintiff and members of his family went to visit. Agents of the Federal Bureau of Investigation remained outside of the home of Rose Flood flashing the lights of their vehicles as signals and maintaining constant surveillance of the home of Rose Flood while the plaintiff

Upon the basis of these findings, the district judge concluded that the court had "jurisdiction of the subject matter of this suit, this being an action to protect the civil rights of the plaintiff, Sam Giancana, under the 4th and 5th Amendments to the Constitution of the United States." He further concluded:

That the rights under the 4th and 5th Amendments to which the plaintiff is entitled as a citizen of the United States and a person within the jurisdiction of the United States are: (1) The right to be free from arbitrary intrusion into his privacy by Agents of the Federal Government, without due process of law; (2) the right to be free from deprivation of his liberty and freedom by agents of the Federal Bureau of Investigation without due process of law; and (3) the right to be let alone by agents of the Federal Bureau of Investigation unless there be reasonable grounds to justify interference of plaintiff's liberty and freedom by said agents.

Defendant did not include in his interlocutory appeal the denial of his motion to dismiss. This court holds, however, that the complaint was fatally defective because there was no express allegation that the amount in controversy exceeded $10,000 and that this amount could not be inferred from the facts in the complaint.

It is incongruous to hold that a formal allegation of the amount in controversy is necessary when personal liberties of the magnitude alleged in the complaint and found by the district court are involved. To require a dollar value to be specifically averred in these circumstances is to exalt form over substance.

In my opinion the fact that there was no formal allegation of the requisite jurisdictional amount did not prevent the district court from assuming jurisdiction. The complaint alleged that defendant and his agents deprived plaintiff of the use of his home and that they violated his right of privacy and personal liberty. From these allegations the district court could infer, contrary to what the majority indicates, that the amount in controversy exceeded $10,000.

I would affirm.

---

Sam Giancana was in and about said residence.

That during the period June 10, 1963 and July 15, 1963 Agents of the Federal Bureau of Investigation followed the plaintiff Sam Giancana to the golf club where he patronizes and remained close to him and those with whom he played golf so that Agents of the Federal Bureau of Investigation numbering from two to four were directly behind plaintiff and his friends as they played golf, being immediately the next foursome following plaintiff and the group with which he was playing golf.

That during the period June 10, 1963 to July 15, 1963 the number of vehicles which the defendant Marlin W. Johnson maintained in and about the home of the plaintiff Sam Giancana at 1147 South Wenonah Street, Village of Oak Park, Illinois, numbered variously from two to as many as five each with two Agents of the Federal Bureau of Investigation for the purpose of maintaining constant twenty-four hour a day observation and surveillance of the plaintiff and his home and to follow him as he went about his private affairs.

That the defendant has not shown to the court any reason or justification for the surveillance and observation of the plaintiff as shown by the evidence.