Howard S. KATZ and David A. Baumann (by Howard S. Katz, as his next friend), Plaintiffs,

v.

UNITED STATES of America: Lyndon B. Johnson as President and Commander in Chief of the Armed Forces of the United States of America, Robert S. McNamara as Secretary of Defense of the United States of America, and Lt. Gen. Lewis B. Hershey as Director of the Selective Service System of the United States of America, Defendants.

No. 66 Civ. 497.

United States District Court
S. D. New York.

Aug. 4, 1966.

Henry Mark Holzer, New York City, Phyllis Tate Holzer, New York City, on the brief, for plaintiffs.

Robert M. Morgenthau, U. S. Atty., by James G. Greilsheimer, Special Asst. U. S. Atty., for defendants.

## MEMORANDUM

TYLER, District Judge.

Plaintiffs, Howard Katz and David Baumann, seek to have this court convene a three-judge district court pursuant to 28 U.S.C. §§ 2282, 2283. They contend that the Universal Military Training and Service Act of 1948, 50 U.S.C. App. §§ 451–473 (hereinafter referred to as "UMTSA") is unconstitutional and seek a declaratory judgment to that effect. Also, they have applied for injunctive relief against enforcement of UMTSA by the President, the Secretary of Defense and the Director of the Selective Service System.

To prevent the improvident granting of injunctions by a single judge against the enforcement of a federal enactment,[1] Congress has provided that an injunction, interlocutory or permanent, restraining the enforcement of a federal statute on the ground of unconstitutionality may be granted or denied only by a district court composed of three judges,[2] and that direct appeal lies to the Supreme Court from such a decision.[3]

 In hearing an application for convention of a statutory three-judge court, the power of a single district judge is limited to the threshold or jurisdictional inquiries of "whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962); see also Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Bell v. Waterfront Commission, 279 F.2d 853 (2d Cir. 1960); Stuart v. Wilson, 282 F.2d 539 (5th Cir. 1960).

Despite allegations of federal jurisdiction based erroneously on other statutes in their complaint, plaintiffs in their briefs rest jurisdiction of their claims upon 28 U.S.C. § 1331, which confers upon the district courts jurisdiction of "all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

1. See 42 Cong.Rec. 4846 (1908) and 45 Cong.Rec. 7252 (1910).

2. Judiciary Act of 1911, ch. 231, § 266, 36 Stat. 1162 (28 U.S.C. §§ 2282, 2284 (1958)).

3. Judiciary Act of 1911, ch. 231, § 226, 36 Stat. 1162 (28 U.S.C. § 1253 (1958)).

Since plaintiffs are directly attacking the constitutionality of an act of Congress, there is no doubt but that the controversy is one which arises under the Constitution and laws of the United States. Further, it will be assumed *arguendo* that the jurisdictional amount, $10,000, is sufficiently satisfied. See, generally, Glenwood Light and Water Company v. Mutual Light, Heat and Power Company, 239 U.S. 121, 125, 36 S.Ct. 30, 60 L.Ed. 174 (1915). The next inquiry in the context of jurisdictional requirements is whether plaintiffs have the requisite "standing" to press their claims. See Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). A party invoking the powers of a court to hold a statute unconstitutional must show not only that the statute is invalid but also that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement. Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), reh. den. 346 U.S. 841, 74 S.Ct. 19, 98 L.Ed. 361 (1953). Doremus v. Board of Education, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952).

■ One of the plaintiffs, David Baumann, is presently on active duty in the United States Army and is stationed at the United States Army Training Center, Fort Sill, Oklahoma. On the date this action was commenced, February 21, 1966, Baumann was not in the armed forces. He was inducted a few days later on March 1, 1966. Consequently, Baumann is now subject to the jurisdiction and control of the United States Army. Because of Baumann's change in status from civilian to military, he presently must be considered a party who is challenging the right of the Army to retain him in custody. Accordingly, Baumann's remedy is by way of an application for a writ of habeas corpus. See Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); United States ex rel. Goodman v. Hearn, 153 F.2d 186 (5th Cir. 1946); see also Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L. Ed. 305 (1944); Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917 (1944); United States ex rel. Albertson v. Truman, 103 F.Supp. 617 (D.C.D.C. 1951). Since Baumann is within the jurisdiction of the military, the claims he makes in the complaint do not present a claim or controversy of which this court has jurisdiction. In other words, because of Baumann's change from civilian to military status, it can be said that, as to him, this action has abated or that he lacks requisite standing to prosecute this litigation.

The other plaintiff, Howard Katz, currently resides in New York City. On October 3, 1963, his local draft board ordered him to report for induction on October 18, 1963. Katz, however, enlisted in the Rhode Island National Guard on October 11, 1963 and accepted a service obligation for six years. As a result, his induction notice was cancelled, and Katz was reclassified as 1-D. He thereupon served a one year tour of active duty in the Army which expired on October 24, 1964. On April 18, 1966, he was released from the Rhode Island National Guard and transferred to the rolls of the United States Army Reserve, of which he is still a member. His service file rests with the Control Group (Annual Training) of the Army Administrative Center in St. Louis. Katz's military obligation will expire on October 10, 1969. His draft classification, of course, remains at 1-D.

Katz does not and cannot contend that he presently is being injured as a result of implementation of the UMTSA. His allegation is that if he is recalled to active duty, he will sustain pecuniary injury because of the nature of his business and because his life may be placed in jeopardy. At the present time, however, Katz has not been assigned to any reserve unit. Therefore, the likelihood of his being called to active duty is very remote.[4]

---

4. See Army Regulation No. 135–300. This regulation provides that Ready Reserve Units are subject to active duty only if a Presidential Proclamation to that ef-

Further, even if he were unexpectedly called to active duty, the law expressly requires that he be given a reasonable time to terminate his business and/or personal affairs before reporting for duty. See 10 U.S.C. § 672.

■ Since Katz has not shown that he has sustained or is immediately in danger of sustaining some direct injury as the result of the enforcement of the UMTSA, he has no standing to press his claim in the sense that he presents no clearly existing claim or controversy for adjudication by this court. See United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); Cramp v. Board of Public Instructions, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961).

■ The inability of plaintiffs to show that they have standing to challenge the validity of the UMTSA is not the only reason why this court declines to convene a three-judge court. Plaintiffs have also failed to show that the constitutional question they allege is substantial.

It is said in the complaint that the UMTSA as a comprehensive statutory scheme violates plaintiffs' constitutional rights under the Ninth Amendment and the Eighth Article of the "Nuremberg Charter". In support of their theory, plaintiffs argue in their briefs that the constitutionality of the Act has never been challenged under either the Ninth Amendment or the "Nuremberg Charter"

In candor, the precise thrust of plaintiff's various assigned reasons of unconstitutionality is not entirely clear. Nevertheless, it is plain enough that their central contention boils down to the point that the power of conscription goes to the essence of the unconstitutionality of the UMTSA. They argue that military service entails for the individual a loss of his freedom to pursue his own vocation, a substantial restraint on his freedom of movement and a possible loss of his life. In other words, a law which provides that an individual can be involuntarily compelled to serve in the armed forces is necessarily unconstitutional because it deprives a person of all of the aforementioned rights.

Without attempting to examine the merits of this argument, I find that the power of Congress to provide for involuntary conscription has been upheld on numerous occasions. United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L. Ed. 1417 (1953); Etcheverry v. United States, 320 F.2d 873 (9th Cir. 1963); United States v. Miller, 233 F.2d 171 (2d Cir. 1956); United States v. Kime, 188 F.2d 677 (7th Cir. 1951); United States v. Henderson, 180 F.2d 711 (7th Cir. 1956). The Court in United States v. Nugent said, "the Selective Service Act is a comprehensive statute designed to provide an orderly, efficient and fair procedure to marshal the available manpower of the country, to impose a common obligation of military service on all physically fit young men. *It is a valid exercise of the war power.*" 346 U.S. at 9, 73 S.Ct. at 996 (emphasis added).

In Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933), the Supreme Court held that in order to find a substantial constitutional question, a district court must determine that the question is not "obviously without merit" or, alternatively, that the question has not been previously ruled on by the United States Supreme Court.

As indicated above, the question of the power of Congress to enact the UMTSA has been ruled on by the Supreme Court as well as numerous other federal appellate courts.

■ Further, in my opinion the question raised by plaintiffs is "obviously without merit". Plaintiffs essentially maintain here that their rights which are allegedly infringed by UMTSA are "life" and "liberty", rights which are clearly

---

fect is issued in times of national emergency. Also, although it is nowhere stated, it is reasonable to presume that

if the reserves were activated, regular reserve units would be called before unattached reservists.

protected by the due process clause of the Fifth Amendment,[5] notwithstanding their bland assertion that they rely not upon the Fifth but the Ninth Amendment. The latter, so rarely invoked by lawyers and litigants, is worth setting forth verbatim here:

"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

To support their argument under the Ninth Amendment, plaintiffs rely almost exclusively on the recent case of Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The Court in *Griswold* held that a Connecticut criminal statute forbidding the use of contraceptive devices by married couples was unconstitutional because it invaded a constitutionally protected right of marital privacy found to emanate from the specific provisions of the Bill of Rights made applicable to the states by the Fourteenth Amendment. In a concurring opinion, Mr. Justice Goldberg stated his belief that the right of privacy as invoked and protected is a fundamental right protected by the due process clause even though it is not expressly enumerated in the first eight amendments. In support of this view, Justice Goldberg relied in part upon the Ninth Amendment as evidencing " * * * a belief of the Constitution's authors that fundamental rights exist that *are not expressly enumerated* in the first eight amendments and an intent that the list of rights included there not be deemed exhaustive." 381 U.S. at 492, 85 S.Ct. at 1686 (emphasis added). Significantly, however, he expressly repudiated the argument that the Ninth Amendment "constitutes an independent source of rights protected from infringement by either the states or the Federal Government." 381 U.S. at 530, 85 S.Ct. at 1706.

It is apparent that the rights of plaintiffs allegedly infringed by UMTSA are specifically enumerated in the due process clause of the Fifth Amendment. Consequently, the Ninth Amendment is no support whatsoever to plaintiffs' position —unless plaintiffs are willing to urge that there is a fundamental right rooted in the traditions of our people (see Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, at 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934)) to be free from any responsibilities to our country, which, to put it tactfully, is a *reductio ad absurdum.*

Plaintiffs also argue that UMTSA violates their "rights" under the Eighth Article of the Nuremberg Charter.[6] 59 Stat. 1544. This Article states:

"The fact that the Defendant acted pursuant to orders of his Government or of a superior shall not free him of responsibility, but may be considered in mitigation of punishment."

There are three categories of crimes listed by the Charter of the International Military Tribunal. These categories are: (1) Crimes against Peace; (2) War Crimes; and (3) Crimes against Humanity. 59 Stat. 1547. It comes as no surprise to find that plaintiffs have not even attempted to show that this country is committing any of these crimes or that it has commanded any of its citizens to do so. Thus, they have utterly failed to make even a *prima facie* showing of how they will be adversely affected by the Nuremberg Charter.

Accordingly, the motion to convene a three-judge court is denied, and the government's cross motion to dismiss the complaint for want of jurisdiction over the subject matter thereof is granted.

Settle order accordingly.

---

5. "No person shall be * * * deprived of life, liberty, or property without due process of law."

6. The correct title of this international agreement is "Charter of the International Military Tribunal", 59 Stat. 1546 (1945).