James **BOYD**, Bernard Hughes, Cecil Ralph Hendrix, and Charter Taylor, Jr., Plaintiffs,

v.

Ramsey **CLARK**, as Attorney General of the United States, Lewis B. Hershey, as Director of Selective Service of the United States, Paul Akst, as Director of Selective Service of the City of New York, Selective Service Board No. 44 of the City of New York and Selective Service Board No. 2 of the City of New York, Defendants.

No. 67 Civ. 2529.

United States District Court
S. D. New York.

Argued Jan. 2, 26, 1968.

Decided June 26, 1968.

Victor Rabinowitz, New York City, (Dorian Bowman, and Rabinowitz, Boudin & Standard, New York City, on the brief), for plaintiffs.

Lawrence W. Schilling and Arthur S. Olick, Asst. U. S. Attys., (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, on the brief), for defendants.

Before HAYS, Circuit Judge, and EDELSTEIN and McLEAN, District Judges.

HAYS, Circuit Judge:

This is an action brought by four Selective Service registrants challenging the constitutionality of the student deferments provided in Section 6(h) (1) of the Military Selective Service Act of 1967, 50 U.S.C.A. App. § 456(h) (1) (Supp.1967), on the grounds that student deferments (1) discriminate against persons who are economically unable to attend college and (2) are arbitrary and bear no reasonable relationship to the purpose of the Act.[1] Plaintiffs, who are all classified I-A,[*] allege that they are unable to secure student deferments solely because they lack the financial means to attend college. The injury claimed is an increased likelihood of induction, because, so the plaintiffs allege, registrants who are deferred as students thereby ordinarily postpone their induction for several years and in many cases escape service entirely by acquiring other deferments. The relief sought is a decree that the Act is unconstitutional as applied to plaintiffs and an injunction restraining defendants from ordering plaintiffs inducted and from prosecuting them for violation of the Act.

At plaintiffs' request a three-judge court was convened pursuant to 28 U.S.C. §§ 2282 and 2284.

We turn first to a consideration of defendants' motion to dismiss the complaint for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted.

I.

Defendants urge that this court is deprived of jurisdiction of the subject matter by Section 10(b) (3) of the Act, 50 U.S.C.A. App. § 460(b) (3) (Supp. 1967):

"* * * No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided*, That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant."

Although the section makes no mention of the availability of habeas corpus after induction, it is doubtful that Congress intended to eliminate that traditional remedy for challenging draft classification. The legislative history indicates that the statutory provision was intended merely as a codification of existing case law. See 113 Cong.Rec. 8052

---

1. A somewhat similar challenge to student deferments was rejected in Talmanson v. United States, 386 F.2d 811 (1st Cir. 1967) on grounds other than those upon which we rely.

* We are informed that during the period that this case was sub judice some of the plaintiffs were reclassified. However since at least one plaintiff is still classified in I-A, reclassification of others does not affect the result which we have reached.

(Daily ed. June 12, 1967) (statement of Sen. Russell); H.R.Rep. No. 267, 90th Cong., 1st Sess. pp. 30–31 (1967); U. S. Code Congressional and Administrative News p. 1308.

Plaintiffs claim that Section 10(b) (3) was not designed to cover this kind of suit. They cite references in the statute and legislative history, supra, to the "no basis in fact" test and "exhaustion of administrative remedies" as evidence that Congress was concerned only with the typical case of the registrant who claims that his local Selective Service Board classified him in the wrong category. (Plaintiffs concede that they are properly classified in I-A.)

Even if plaintiffs' argument as to the inapplicability of the statute were to be accepted, they would gain little. It would still be necessary for them to establish the inapplicability of the pre-1967 decisions holding that defense to a criminal proceeding and post-induction writ of habeas corpus are the exclusive means by which classifications may be challenged. See, e.g., Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567 (1946); Witmer v. United States, 348 U.S. 375, 377, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Watkins v. Rupert, 224 F.2d 47 (2d Cir. 1955); Schwartz v. Strauss, 114 F.Supp. 438 (S.D.N.Y.), aff'd on opinion below, 206 F.2d 767 (2d Cir. 1953).

■ A registrant who has not received and acted on an order of induction cannot get injunctive relief because he cannot show "irreparable harm," Watkins v. Rupert, supra, 224 F.2d at 48; Muhammad Ali v. Breathitt, 268 F. Supp. 63, 65 (W.D.Ky.1967); because he is not "aggrieved," Daniels v. United States, 372 F.2d 407, 414 (9th Cir. 1967); because he lacks "standing" in light of the lack of immediate danger of direct injury, Katz v. United States, 287 F.Supp. 29 (S.D.N.Y. Aug. 8, 1966); because the action is "premature" or

"not ripe," Feldman v. Local Board No. 22, 239 F.Supp. 102, 105–106 (S.D.N.Y. 1964), Westerbeke v. Local Draft Board No. 2, 118 F.Supp. 441, 444 (S.D.N.Y. 1954); and because the dispute may become "moot" or "academic," Wolff v. Selective Service Local Board No. 16, 372 F.2d 817, 823 (2d Cir. 1967), Feldman v. Local Board No. 22, supra, 239 F.Supp. at 105.

In Wolff v. Selective Service Local Board No. 16, supra, plaintiffs alleged that they were reclassified I-A for participating in a draft protest. The court expressed itself as concerned with the chilling effect on the exercise of first amendment rights created by the threat of reclassification and held that plaintiffs had sustained a legally cognizable injury for which they could seek injunctive relief.[2] However, the court said that in the ordinary case, injunctive relief would be inappropriate.

"* * * in the usual run of Selective Service cases, the registrant must wait until he receives an induction order, and has either obeyed it or is prosecuted for refusing to obey it, before the courts may review his classification. This is so because, in nearly all cases, it is service in the armed forces itself, and not the mere classification, that constitutes the alleged injury. Thus, should it develop that for independent reasons such as physical disability the registrant is not actually wanted by the armed forces, he will never have sustained a legally redressible injury. Perhaps it is true that a mere adverse classification will cause a disarray of plans and emotional upset but this is an acceptable price to pay for the efficient functioning of the Selective Service * * *." Id., 372 F.2d at 823.

Courts, commentators and Congress agree that any incidental inconvenience to plaintiffs is outweighed by the value of keeping the Selective Service System

2. It can be argued that Section 10(b) (3) has overruled *Wolff*. See Carpenter v. Hendrix, 277 F.Supp. 660 (N.D.Ga.1967); H.R.Rep. No. 267, 90th Cong., 1st Sess. pp. 30–31 (1967); 81 Harv.L.Rev. 685, 689 (1968).

from becoming entangled in litigation which may prove unnecessary. See, e. g., Falbo v. United States, 320 U.S. 549, 554–555, 64 S.Ct. 346, 88 L.Ed. 305 (1944); Comment, Fairness and Due Process Under the Selective Service System, 114 U.Pa.L.Rev. 1014, 1018–19 (1966); H.R.Rep. No. 267, 90th Cong., 1st Sess. pp. 30–31.

■ Since plaintiffs may never be required to report for induction, we hold that their claim is prematurely made and is not now ripe for adjudication.

## II.

■ Even if we were to conclude that plaintiffs' claims were justiciable, however, we would be required to dismiss the complaint for want of jurisdiction. Jurisdiction of this suit is claimed under 28 U.S.C. § 1331, the general federal question statute, which requires that "the matter in controversy" exceed "the sum or value of $10,000." Plaintiffs' counsel concedes that he cannot prove that any of the plaintiffs will suffer a monetary loss of more than $10,000 by reason of the injury alleged.

It is firmly settled law that cases involving rights not capable of valuation in money may not be heard in federal courts where the applicable jurisdictional statute requires that the matter in controversy exceed a certain number of dollars. The rule was laid down in Barry v. Mercein, 46 U.S. (5 How.) 103, 12 L.Ed. 70 (1847), a child custody case.[3] The "right to the custody, care, and society" of a child, the court noted, "is evidently utterly incapable of being reduced to any pecuniary standard of value, as it rises superior to money considerations." 46 U.S. at 120. Since the

statute permitted appeals only in those cases where the "matter in dispute exceeds the sum or value of two thousand dollars," the court concluded that it was without jurisdiction:

> "The words of the act of Congress are plain and unambiguous * * *. There are no words in the law, which by any just interpretation can be held to * * * authorize us to take cognizance of cases to which no test of money value can be applied." 46 U.S. at 120.

Subsequent decisions have followed this reasoning. See Kurtz v. Moffitt, 115 U.S. 487, 498, 6 S.Ct. 148, 29 L.Ed. 458 (1885); First Nat. Bank of Youngstown v. Hughes, 106 U.S. 523, 1 S.Ct. 489, 27 L.Ed. 268 (1882); Giancana v. Johnson, 335 F.2d 366 (7th Cir. 1964), cert. denied, 379 U.S. 1001, 85 S.Ct. 718, 13 L. Ed.2d 702 (1965); Carroll v. Somervell, 116 F.2d 918 (2d Cir. 1941); United States ex rel. Curtiss v. Haviland, 297 F. 431 (2d Cir. 1924); 1 Moore, Federal Practice ¶ 0.92[5] (2d ed. 1964).[4]

The action is dismissed for lack of a justiciable controversy and for want of jurisdiction.

EDELSTEIN, District Judge (dissenting):

I dissent.

I would deny defendants' motion to dismiss the complaint for lack of jurisdiction of the subject matter and for failure to state a claim upon which relief can be granted. Since the majority opinion separates the two grounds for dismissal in separately numbered portions of the opinion, my dissent will follow a similar sequence.

3. See, e. g., Perrine v. Slack, 164 U.S. 452, 17 S.Ct. 79, 41 L.Ed. 510 (1896); Clifford v. Williams, 131 F. 100 (C.C. N.D.Wash.1904).

4. A few decisions have refused to dismiss suits for damages for invasion of rights which appear impossible of pecuniary evaluation on the ground that a jury

might award sufficient damages to satisfy the jurisdictional amount. See Wiley v. Sinkler, 179 U.S. 58, 65, 21 S.Ct. 17, 45 L.Ed. 84 (1900) (rejection of vote); Brickhouse v. Brooks, 165 F. 534, 543 (C.C.E.D.Va.1908) (rejection of vote). See also Hynes v. Briggs, 41 F. 468 (C.C. E.D.Ark.1890) (false imprisonment for fifteen minutes).

## I.

In the first place, it is helpful to point out what this case is not—it is not a challenge to an individual's personal Selective Service classification in the Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), tradition. Plaintiffs * clearly and unequivocally concede that under the present system of Selective Service classifications that their individual classifications are indeed correct. Section 10(b) (3) of the Selective Service Act, 50 U.S.C.A. App. § 460(b) (3) (Supp.1967), relied upon so heavily by the defendants, is by its very language not relevant to the set of facts at bar for it states "* * * No judicial review shall be made of the *classification or processing of any registrant* by local boards, appeal boards, or the President * * *." (emphasis added). The plaintiffs are not objecting to their individual classifications or processing within the system as it exists but are instead seriously objecting to the constitutionality of the whole system of classifying and processing due to an alleged unconstitutional taint.

The majority opinion, in broad gauge, lists several excerpts from various cases to establish a rationale for the proposition that a registrant who has not received and acted on an order of induction cannot get injunctive relief. The actual rationale is, as later mentioned in the majority opinion, that "any incidental inconvenience to plaintiffs is outweighed by the value of keeping the Selective Service System from becoming entangled in litigation which may prove unnecessary." In short, one person may not burden the Selective Service System with his individual problems until he is actually "under the gun." The cases cited by the majority opinion, with one ex-

ception, Muhammad Ali v. Breathitt, 268 F.Supp. 63 (W.D.Ky.1967), are all classification cases and easily explainable in the light of the true rationale.

In the case at bar, the rationale is not agreeable to reason. These plaintiffs are attacking an integral part of the Selective Service System. This case is an attempt to challenge the concept of student deferments which is a basic part of the Selective Service whole. It serves no purpose to defer this case for later, as in the case of individual classifications, since if the System is indeed unconstitutional, it is better to strike it down now before more harm be done, while if the System is constitutional, it serves the national purpose to vindicate it in these times when the System is subject to intense and often hostile questioning by large segments of the American people. To the extent that Muhammad Ali v. Breathitt, supra, would call for a contrary result, I would decline to follow it.

In the usual classification case, the plaintiff attempts to demonstrate why he should not be classified I-A. His grievance is not actually his alleged misclassification but his contemplated induction into the armed forces as a result of the alleged error in classification. In the case at bar, the plaintiffs are not complaining about military service as such. What they are complaining about is the increased likelihood that they, rather than others who hold a II-S deferment, will have to serve. They allege that an unconstitutional preference has been established and that their increased likelihood of induction is the harsh result of that preference. This increased likelihood of induction exists now—indeed, it would end once the plaintiffs are in fact inducted. This alleged un-

* The court has been advised by the United States Attorney, by letter dated June 19, 1968, that plaintiff Bernard Hughes was classified II–S by his local board on June 11, 1968, that plaintiff Ralph Hendrix was classified II–A by his local board on April 9, 1968, that plaintiff James Boyd was classified I–A by his lo-cal board, after his request for conscientious objector status was denied, on June 10, 1968, and that a response is being awaited from plaintiff Charter Taylor, Jr.'s, local board as to his current status. These new developments have no effect on this dissent except for the possibility that it may only apply to the plaintiff Boyd.

fairness is harmful both in tangible and intangible ways. It pervades their entire lives and acts as an inhibiting force upon their daily activities. It is claimed by plaintiffs that numerous II-S classification holders are in fact never called for military service for a variety of reasons. If this is true, and it must be emphasized that plaintiffs have not been given the chance to prove this contention, then plaintiffs are in the position of being liable for national service while others are not. This is a contingent liability of a very painful sort. It is difficult enough to be uncertain as to whether or not one must serve in terms of planning a life for oneself, but it is indeed lamentable that this must be so when others are relatively free from this predicament. It is painful enough to feel that one is being discriminated against, but how much worse must it be if that is really the situation? The draft and the possibility of its being a monstrous discrimination against the underprivileged is a topic which has caused concern to many. The plaintiffs must be given a chance to demonstrate that the student deferments are indeed an unconstitutional discrimination so that the Selective Service System will either stand free from doubt or be called to task. The plaintiffs, as a part of the general public most immediately affected by the System, have the standing to free their minds from their bitter certainty that the System is weighted against them. They have the standing to seek freedom of their persons from the greater chance of a service which, though honored and honorable, is not one of their choice if others, for reasons which our Constitution holds to be invalid, are spared.

The doctrine of ripeness is sometimes invoked to bar an adjudication. All that the doctrine of ripeness means is that a court will not decide a case until it is practical to do so. In considering whether or not a case is ripe a court looks to see if a dispute has reached that stage in its maturing in which judicial intervention is the best solution and whether that intervention can effectively settle the matter. In the case at bar the time for decision seems suitable now. It is as important to the Selective Service System as it is to the plaintiffs to have this unsettled and disquieting question resolved at the earliest possible time.

In Wolff v. Selective Service Local Board No. 16, 372 F.2d 817 (2d Cir. 1967), a classification case, two plaintiffs were held entitled to pre-induction relief. The court in *Wolff* decided that since the plaintiffs were classified I-A as a punishment for participating in a draft protest, this type of reclassification would have the effect of stifling free speech and was therefore an interference with first amendment rights and immediately redressible in court. If that court were merely worried about the first amendment rights of *Wolff* and his co-plaintiff, it might very well have required them to wait until they were actually inducted. After all, they were already reclassified I-A, what more could the local board do to them except call them for induction? There was nothing else that could have been done to interfere with their first amendment rights. The court must have been looking at the chilling effect on the exercise of first amendment rights created by the threat of reclassification as that threat related to others not yet reclassified. *Wolff* was not the case of two individuals and their respective reclassifications but in actuality it dealt with an entire class of war protesting college students. The same urgency for a decision on the merits is presented by the case at bar. Now, when there are grumblings to be heard, is the time to tell not just these plaintiffs but the whole class of non-students whether or not they are being deprived of their fifth amendment rights.

The majority opinion infers that plaintiffs' proper method of procedure is to be inducted and then to proceed by habeas corpus. The opinion candidly expresses the possibility that habeas corpus may be precluded by Section 10(b)(3) of the Selective Service Act al-

though it does belittle this possibility. Research has indicated no case in which an induction was challenged on grounds similar to those in the case at bar by petition of habeas corpus. The habeas cases are all classification cases and this is not a classification case. The plaintiffs are not challenging their classifications and after induction they would be hard pressed to say that they should not be soldiers. In addition, by the time a habeas petition could be brought their claim would be overripe. The increased likelihood of induction would have silently slipped into the reality of induction and plaintiffs' claim would have expired.

In any event, possibility of habeas or no, this is the time to come to grips with plaintiffs' contentions on the merits. This is a three-judge statutory court empaneled to hear and determine constitutional issues. Such an issue is present now and it should be reached. Habeas corpus is a remedy for a wrong already done—it is not a proceeding to hear and determine in the first instance.

## II.

The majority opinion holds that this court is without jurisdiction since jurisdiction is claimed by the plaintiffs under 28 U.S.C. § 1331 and the matter in controversy does not exceed the sum or value of $10,000.00. The majority opinion points out that plaintiffs' counsel has conceded that he cannot prove that any of the plaintiffs will suffer a monetary loss of more than $10,000.00.

In the first place, it should be indicated that the jurisdictional amount question was raised by the court *sua sponte*. Plaintiffs, in their amended complaint, alleged that the matter in controversy exceeds the sum of $10,000.00 and this allegation was not denied by the Government. Often a district court will raise this question itself, but such a procedure is only utilized to keep picayune cases in the state small claims courts where they belong.

Two different, although similar, rationales have been given for the juris-dictional amount portion of the statute. The Supreme Court, in Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248 (1934), spoke as follows:

From the beginning suits between citizens of different states, or involving federal questions, could neither be brought in the federal courts nor removed to them, unless the value of the matter in controversy was more than a specified amount. Cases involving lesser amounts have been left to be dealt with exclusively by state courts, except that judgment of the highest court of a state adjudicating a federal right may be reviewed by this Court. Pursuant to this policy the jurisdiction of federal courts of first instance has been narrowed by successive acts of Congress, which have progressively increased the jurisdictional amount. (footnote omitted). The policy of the statute calls for its strict construction. The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution. (citation omitted). Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined. (citations omitted). Id. at 269–270, 54 S. Ct. at 703.

The case at bar clearly does not involve any notions of federalism. It is apparent that a state court would be powerless to act against the federal Selective Service System.

In Giancana v. Johnson, 335 F.2d 366 (7th Cir. 1964), cert. denied, 379 U.S. 1001, 85 S.Ct. 718, 13 L.Ed.2d 702 (1965), the court quoted from the Senate Report which accompanied the bill which raised the jurisdictional amount to $10,000.00:

"The recommendations of the Judicial Conference regarding the amount

in controversy, which this committee approves, is based on the premise that the amount should be fixed at a sum of money that will make jurisdiction available in all substantial controversies where other elements of Federal jurisdiction are present. The jurisdictional amount should not be so high as to convert the Federal courts into courts of big business nor so low as to fritter away their time in the trial of petty controversies." Id. at 368–369 n. 7, quoting from S.Rep. No. 1830, 85th Cong., 2d Sess. (1958), 1958 U.S.Code Cong. & Ad. News, pp. 3099, 3101.

This case is hardly a petty controversy with which this court would fritter away its time if it were to hear this case on its merits.

The dissent in *Giancana* heartily disagreed with the majority's dismissal for want of jurisdictional amount in controversy:

It is incongruous to hold that a formal allegation of the amount in controversy is necessary when personal liberties of the magnitude alleged in the complaint and found by the district court are involved. To require a dollar value to be specifically averred in these circumstances is to exalt form over substance.

In my opinion the fact that there was no formal allegation of the requisite jurisdictional amount did not prevent the district court from assuming jurisdiction. The complaint alleged that defendant and his agents deprived plaintiff of the use of his home and that they violated his right of privacy and personal liberty. From these allegations the district court could infer, contrary to what the majority indicates, that the amount in controversy exceeded $10,000.00. Id. at 371.

In the case at bar, plaintiffs did aver that the amount in controversy exceeds $10,000.00. The court could easily assume that freedom from an unconstitutional discrimination exceeds the sum or value of $10,000.00. This is not the nineteenth century where property rights were valued over human rights. If a man can sue in federal court on the allegation that the government is injuring his property, he certainly must be allowed to sue on the allegation that the government is oppressing him personally. Although it might be said that human rights are incapable of valuation and hence valueless, it is better to view them as incapable of valuation but only because they are of infinite value. The latter view is, in my humble opinion, the only view compatible with the commitment of our nation to a belief in the dignity of man and the inherent worth of a free individual in a free society.

It might even be that if Section 1331 were faced squarely and plaintiffs were required to demonstrate that the matter in controversy was worth some precise monetary amount (a demonstration that plaintiffs concededly cannot make), that Section 1331 is unconstitutional as applied to the situation at bar. Since plaintiffs cannot bring their action in a state court, if Section 1331 is used to cut them off from a federal forum they are left with a claim of governmental unfairness with no situs of adjudication. They have not even an administrative tribunal available to hear their complaint since the local draft board, the appeals board, or the national board are obviously without power to declare unconstitutional a portion of the statute which created them. Is it compatible with the fifth amendment's guarantee of due process to sanction such a state of affairs?

As courts are justifiably loath to declare acts of Congress unconstitutional if there exists another less drastic method of dispensing justice, one solution out of this court created jurisdictional dilemma is to accept plaintiffs' allegation that the amount in controversy exceeds $10,000.00 either on the theory that allegations not denied are deemed established or on the theory that an alleged discriminatory interference is inherently worth more than $10,000.00.

In Townsend v. Zimmerman, 237 F.2d 376 (6th Cir. 1956), the amount in controversy requirement was not even touched upon. Judge (now Mr. Justice) Stewart reversed the denial of a pre-induction injunction in a classification case when the local board denied plaintiff his right of an administrative appeal. Neither the court's opinion, nor the briefs submitted by the parties, nor plaintiff's complaint mentioned any jurisdictional amount or any statutory basis of jurisdiction for that matter.

Since this controversy is ripe for adjudication and since the jurisdictional requirements of 28 U.S.C. § 1331 are met, this court should proceed to hear this case on its merits.