John C. CHRISTENSEN, Plaintiff,

v.

Zel RICE, Individually and as Secretary of the Department of Transportation, et al., Defendants.

No. 77–C–303.

United States District Court,
E. D. Wisconsin.

Aug. 31, 1978.

Patrick T. Sheedy & Associates by Willard P. Techmeier, Milwaukee, Wis., for plaintiff.

Bronson C. LaFollette, Atty. Gen. by Albert O. Harriman, Asst. Atty. Gen., Madison, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This is an action for injunctive and declaratory relief and damages under 42 U.S.C. § 1983. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343. The following facts are undisputed for purposes of this summary judgment motion.

The plaintiff, John R. Christensen, is an independent manufacturer's representative whose job requires frequent driving throughout the state of Wisconsin and, on occasion, in other states. Sometime before he received his first driver's license, the plaintiff's left arm was amputated. The defendant Zel Rice is the secretary of the

department of transportation of the state of Wisconsin and has control over the division of motor vehicles, bureau of driver control. The defendants Gene Fencl and John O. Peterson are driver's license examiners having direct control over the issuance of licenses to drivers.

For the twenty years preceding the events giving rise to this action, the plaintiff possessed a driver's license with only a single restriction requiring automatic turn signals on the cars he operates. Generally, the plaintiff uses an automobile having automatic transmission for his work. However, he also owns a truck and two Hudson automobiles that have standard transmissions.

On September 27, 1976, the plaintiff came to the Green Bay district headquarters of the division of motor vehicles, apparently in response to a letter from the division stating that he would have to undergo an eye test before his license could be renewed. After completing the eye test, the plaintiff was informed that he would have to speak with the supervisor, Gene Fencl. Without administering any road test, Mr. Fencl informed the plaintiff that because he has a "handicap" he would receive a restricted license. The plaintiff protested, arguing that he had driven on a license without restrictions for 20 years, that he was able to drive a car with a standard transmission, and that the proposed restrictions would adversely affect his livelihood as a traveling manufacturer's representative. The conversation evidently became heated, and Mr. Fencl referred to the plaintiff as a "hazard on the highway" and a "menace to the other drivers." He also stated that regardless of how the plaintiff made his living, the restrictions would be placed on his license.

Later, the plaintiff mailed his license application directly to the state department of transportation. Shortly thereafter, the plaintiff received a driver's license with a restriction requiring automatic turn signals—a license identical to the one he had held for the previous 20 years. However, three months later, the plaintiff received a letter from the division of motor vehicles informing him that his license was invalid and that he would have to submit to a road test.

On December 29, 1976, the plaintiff went to the testing station in De Pere, Wisconsin, purposely avoiding another confrontation with Gene Fencl. The defendant John O. Peterson, the license examiner at the De Pere office, refused to give the plaintiff a road test because his car registration stickers were not displayed as required. On a second visit to the De Pere office, Mr. Peterson refused to administer a road test to the plaintiff because a seat belt was not showing as required. However, on a third visit to the De Pere office, Mr. Peterson gave the plaintiff a road test, and the plaintiff passed. The plaintiff then received a license with restrictions that he drive cars with power steering or a "steering knob" with an automatic transmission and with automatic turn signals. Mr. Peterson imposed these restrictions on the plaintiff because the car in which the plaintiff was tested had an automatic transmission, power steering and automatic turn signals. Upon request, the plaintiff refused to surrender the license that had been sent to him by mail earlier.

After the instant action was commenced, the plaintiff was given a new road test on July 16, 1977. The plaintiff took the test in a truck having a standard transmission on the steering column and having no power steering. The plaintiff passed the test and was given a license with a restriction that he drive a car with automatic transmission or with a standard transmission on the steering column but no restriction as to power steering. The plaintiff still refuses to surrender the two licenses issued previously to him.

The complaint claims that the defendants' conduct has violated the plaintiff's rights secured by the eighth, ninth and fourteenth amendments to the Constitution. He seeks a declaration that his constitutional rights have been violated and an injunction restraining the defendants from imposing restrictions requiring an automatic transmission, automatic turn signals, power

steering or a steering knob. In addition, he seeks substantial compensatory and punitive damages.

The plaintiff does not suggest in his brief how the eighth, or ninth amendments to the Constitution are implicated by the defendants' conduct. Moreover, the plaintiff has not advanced any argument in support of his equal protection claim that is separate from the argument made in support of his due process claim. He does not suggest that highway safety is an impermissible state interest or that the imposition of restrictions on the licenses of drivers with handicaps is not reasonably related to the state's interest in highway safety. Thus, it appears that the plaintiff's grievance is that his due process rights were violated by the manner in which the restrictions were imposed on his license.

The plaintiff claims that he was deprived of due process in two respects. First, he claims that the defendants should have accorded him the opportunity to take a road test prior to advising him that restrictions would be placed on his license. Second, the plaintiff argues that the defendants should have advised him in advance that if he wished to have no restrictions as to power steering or automatic transmission he should arrange to be tested in a vehicle without power steering or automatic transmission.

■ The plaintiff relies on *Freitag v. Carter,* 489 F.2d 1377 (7th Cir. 1973); *Raper v. Lucey,* 488 F.2d 748 (1st Cir. 1973) and *McNamara v. Malloy,* 337 F.Supp. 732 (D.Vt.1971). All of these cases concern situations where the plaintiff was *absolutely* deprived of a driver's license. It is clear that due process protects against such deprivations and that because such deprivations are severe, the procedures employed must be correspondingly protective.

■ The right to a license without restrictions is less significant than the right to obtain a driver's license. Nevertheless, the right to a license free from restrictions does have sufficient weight to require that the restrictions be imposed in a fair man-

ner. However, the balance between the governmental and private interests in this context, when considered in light of our notions of due process, does not require more elaborate procedures than the plaintiff was afforded in this case. *Cafeterial & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

■ The plaintiff concedes that he uses a car with automatic turn signals and transmission and power steering for work and that all three licenses he has received during the course of this dispute permitted him to continue driving as usual. Furthermore, when the plaintiff persisted in his objection to the restrictions on his license, he received a road test on an automobile with standard transmission and was relieved of the restriction as to automatic transmission to the extent that he may now use an automobile with a stick shift on the steering column. Thus, the restrictions imposed on the plaintiff's license were removed upon his demonstrating that he was capable of safe driving without the restrictions.

I do not believe that the plaintiff's interest in a nonrestricted license required that the road test be administered before the restriction was imposed. Certainly, it is reasonable for the state to assume that a person with only one arm would have difficulty simultaneously operating the steering mechanism and a stick shift and would be unable to use his arm for signalling turns while grasping the steering wheel. It is also reasonable for the state to assume that it would be more difficult for such a person to turn a steering wheel without power steering. Given the reasonableness of these assumptions, I believe it is not fundamentally unfair to require that drivers have the burden of showing that these assumptions are inaccurate as applied to them.

■ The record in this case reveals that the primary basis for the plaintiff's challenge to the procedures employed by the defendants is the unpleasant manner in which he was treated. However, defamatory statements and malicious conduct alone do not establish a constitutional violation

for which relief may be obtained under 42 U.S.C. § 1983. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

For the above reasons, it is my conclusion that there is no factual issue material to the question whether the plaintiff was deprived of a constitutional right. The defendants are entitled to judgment as a matter of law dismissing the plaintiff's action.

Therefore, IT IS ORDERED that the defendants' motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that this action be and hereby is dismissed.