Donald T. WEBER, Plaintiff-Appellant and Cross-Respondent-Petitioner,

v.

CITY OF CEDARBURG, Defendant-Respondent and Cross-Appellant,

Eugene C. BOEVERS, Roland R. Church and Jacqueline S. Weber, Defendants.

Supreme Court

*No. 84-965. Argued February 10, 1986.—Decided April 2, 1986.*

(Also reported in 384 N.W.2d 333.)

For the petitioner there were briefs by *Mark J. Rogers* and *Angermeier & Rogers,* Milwaukee, and oral argument by *Robert C. Angermeier,* Milwaukee.

For the defendant-respondent and cross-appellant there was a brief by *Patti J. Kurth, Jeffrey A. Schmeckpeper* and *Kasdorf, Lewis & Swietlik, S.C.,* Milwaukee, and oral argument by *Mr. Schmeckpeper.*

LOUIS J. CECI, J. This is a review of a decision of the court of appeals, *Weber v. City of Cedarburg,* 125 Wis. 2d 22, 370 N.W.2d 791 (Ct. App. 1985), affirming a judgment of the circuit court for Ozaukee county, Richard T. Becker, circuit judge, presiding, entered on May 3, 1984. The circuit court dismissed Donald T. Weber's 42 U.S.C. sec. 1983 claims against the city of Cedarburg (Cedarburg).

The issue is whether Weber's complaint alleges conduct which results in the deprivation of any of Weber's constitutional rights or interests. We find that Weber's complaint does not set forth any cognizable deprivation of any rights, privileges or immunities extended by the Constitution. We, therefore, affirm the court of appeals' decision which left intact the circuit court's judgment dismissing Weber's sec. 1983 claims against the city of Cedarburg for failure to state a claim upon which relief could be granted.

Defendant Eugene Boevers was, at the time material to this case, chief of police of the city of Cedarburg; defendant Roland Church was a sergeant on the Cedarburg police force. Jacqueline S. Weber, the other named individual defendant, was the wife of the plaintiff at the time material to this action. Donald Weber filed a complaint on May 10, 1982, in which he alleged, among other things, that he was the victim of a conspiracy conducted by these three which extended from the spring of 1980 until January 12, 1981.

Weber claimed that the police chief, acting under color of law, directed a pattern of official police surveillance of him, without any basis for believing Weber had committed or was about to commit an unlawful activity. The alleged police misconduct consisted of Boevers' ordering Church to conduct surveillance on

Weber, including following Weber to softball games and taverns, to conduct license checks on the cars in the parking lots of the places Weber frequented, and to take notes on Weber's activities and then report such activities to Boevers. Church also allegedly went to an apartment of Weber's employer "for the purpose of illegally entering and searching said apartment," but Weber does not allege in his complaint that such an entry actually occurred. The purpose of the surveillance was allegedly for the personal benefit and advantage of Boevers and Jacqueline Weber.

To conceal the police misconduct and to justify the surveillance, the individual defendants publicly disclosed that Weber was suspected of using and distributing cocaine and other unlawful drugs, even though the defendants "knew there was no basis" for the assertions.[1]

Weber bases his sec. 1983 action against Cedarburg on the allegation that Boevers' and Church's conduct and actions were under color of law; that Boevers' actions, because Boevers was chief of police, "established the official policy, practices, and customs" of Cedarburg's police department; and that the police conduct "was pursuant to a pattern and practice of similar unwarranted acts of surveillance and illegal break-ins as established and ordered by defendant Boevers . . .," committed at or about the same time period as the violation of the plaintiff's rights."

---

[1] Weber does not claim that the assertions regarding his alleged involvement with drugs were the fruit of any surveillance activity; rather, he alleges that the statements concerning his drug activity represent completely false statements intended to justify surveillance.

Weber claims that the police misconduct deprived him of the following constitutional rights:

"a. To be free from a search and seizure without reasonable or probable cause or warrant and his right to be let alone and to be free from unwarranted governmental intrusion in his private life, all as protected by the Fourth and Fourteenth Amendments to the United States Constitution;

"b. To be free from the loss, without due process, of his liberty interest in avoiding the unreasonable and arbitrary governmental intrusion on his privacy and right to be let alone as protected by the Fourteenth Amendment to the United States Constitution; and

"c. To be free from the loss, without due process, of his liberty and property interests in his reputation, business and profession as protected by the Fourteenth Amendment to the United States Constitution. . . ."

As a result of the alleged constitutional deprivations, Weber complains of injury to his reputation, trade, and business, "particularly in his ability to make career advancements;" to his loss of right to privacy; and to his right to be free from loss of liberty and property interests without due process of law, all in the amount of $500,000.

Following its answer, Cedarburg moved the circuit court for an order dismissing the complaint against itself because, among other things, Weber failed to comply with statutory procedure for maintaining an action against Cedarburg and because the complaint failed to state a claim upon which the court could grant relief.

The circuit court initially dismissed the complaint for Weber's failure to comply with the notice of claim

statute, sec. 893.80(1)(b), Stats.[2] The court of appeals reversed. Upon remand, the circuit court again dismissed the complaint, this time on sec. 1983 grounds, holding that the pleadings did not suggest any deprivation of Weber's constitutional rights. The circuit court also held that Weber's complaint alleged no actual specific harm; rather, only conclusory allegations of harm were made. The court gave Weber 20 days within which to amend his complaint; instead, he appealed the court's decision to the court of appeals.

The court of appeals likewise concluded that Weber failed to adequately plead a cognizable constitutional deprivation. It held that no fourth amendment deprivation was alleged because Weber claimed no search or seizure of his person, house, papers, or effects. *Weber*, 125 Wis. 2d at 28. It also held that the right to be free from governmental intrusion is very narrow; Weber's allegations with respect to his privacy rights did not "establish a violation of a constitution-

---

[2] That statute provides:

" **893.80    Claims against governmental bodies or officers, agents or employes; notice of injury; limitation of damages and suits.** (1) No action may be brought or maintained against any . . . political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employe of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:

". . .

"(b)    A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant . . . corporation, subdivision or agency and the claim is disallowed. Failure of the appropriate body to disallow within 120 days after presentation is a disallowance. . . ."

ally protected right" because attendance at softball games and taverns do not come within constitutional perimeters. *Id.* at 29. Finally, the court determined that the allegation that Weber " 'has suffered in his reputation, trade and business and particularly in his ability to make career advancement . . .' does not sufficiently describe or allege an actual deprivation of constitutionally protected rights. . . ." *Id.* at 29–30.

The purpose of a motion to dismiss for failure to state a claim upon which relief can be granted is to test the legal sufficiency of the claim. *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979). Because pleadings are to be liberally construed, a claim for relief should not be dismissed unless it appears "that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations." *Id.* at 732.

Whether a complaint states a claim upon which relief can be granted presents a question of law. This court reviews questions of law without deference to lower courts. *Milwaukee Met. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 71, 375 N.W.2d 649 (1985). Because this action comes to this court on appeal from a motion to dismiss for failure to state a claim, only the allegations made within the complaint are relevant to our decision.

Weber relies on 42 U.S.C. sec. 1983 to hold Cedarburg liable for any misconduct of Boevers and Church. That section provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any

State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. sec. 1983 (1982).

An inquiry into whether a complaint alleges a sec. 1983 action must focus on two essential elements: (1) whether the conduct of which the plaintiff complains was committed by a person acting under color of state law; and (2) whether the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981). "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' " of the United States. *Baker v. McCollan,* 443 U.S. 137, 140 (1979) (quoting 42 U.S.C. sec. 1983). Because addressing the first level of inquiry—whether the plaintiff suffered a cognizable deprivation—is dispositive of our review in this matter, we do not consider whether Boevers' and Church's conduct was under color of state law.[3] Weber's complaint alleges constitutional deprivation based on the fourth amendment (search and seizure); first amendment (freedom of association); and fourteenth amendment (deprivation of

---

[3] In *Monroe v. Pape,* 365 U.S. 167 (1961), the Supreme Court defined the phrase "under color of state law": " 'Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law.' " *Id.* at 184 (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)).

privacy and deprivation of liberty or property interest without due process of law) to the U. S. Constitution. Accordingly, we address each constitutional basis supporting Weber's sec. 1983 action against Cedarburg.

## I.

The fourth amendment to the U. S. Constitution establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." Weber contends that the surveillance conducted by Boevers and Church deprived him of his right to be free from unreasonable searches and seizures because the officers did not believe in good faith that he was engaged in criminal conduct.

Weber relies on the lower court's opinion in *Giancana v. Johnson,* 335 F.2d 366 (7th Cir. 1964), for his proposition. In *Giancana,* the Seventh Circuit Court of Appeals vacated the lower court's decision on jurisdictional grounds. The lower court determined that the FBI surveillance conducted on Giancana, including intrusively following him and his family to social gatherings, deprived him of his " 'right to be let alone . . . unless there be reasonable grounds to justify interference of plaintiff's liberty and freedom. . . .' " *Id.* at 371 (Swygert, J., dissenting) (quoting from decision of federal district court). Weber concludes that surveillance which is conducted in bad faith and without probable cause constitutes a violation of his fourth amendment rights.

We find that Weber fails to allege any fourth amendment deprivation under a liberal reading of his

complaint. Whether the fourth amendment applies to protect the plaintiff's interest against government surveillance depends upon whether the plaintiff has a reasonable expectation of privacy in his social activities which has been invaded by government conduct. *See, State v. Stevens,* 123 Wis. 2d 303, 316, 367 N.W.2d 788 (1985). A reasonable expectation of privacy, in turn, depends upon whether the plaintiff has exhibited an actual expectation of privacy in the activities and whether society will recognize the expectation as reasonable. *Id.* (citing *Smith v. Maryland,* 442 U.S. 735, 740–41 (1979)).

■ It is unreasonable to argue that Weber had either a subjective or objective expectation of privacy in his attendance at softball games or in his tavern-going. Weber does not allege that his activities were not in plain view. "What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. 347, 351 (1967). Based on the allegations set forth in the complaint, Weber simply had no expectation of privacy at the places where the police surveyed his activities. Not all government surveillance is per se violative of constitutional rights. *Glaros v. Perse,* 628 F.2d 679, 684 (1st Cir. 1980). The government's good or bad faith motive for surveillance does not affect whether a search occurred, as Weber would have this court believe based on the lower court's decision in *Giancana.*

We also note that Weber's complaint does not allege an actual entering into his employer's apartment. Because his complaint does not allege a cognizable search or seizure of Weber's person, home, papers, or

effects, we hold that Weber's complaint fails to state a claim for deprivation of his fourth amendment rights.

## II.

The first amendment to the U. S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people to peaceably assemble. . . ." Freedom of association is an implied incident of the first amendment guarantees. "[I]ts existence is necessary in making the express guarantees fully meaningful." *Griswold v. Connecticut,* 381 U.S. 479, 483 (1965).

The effective exercise of the freedoms of speech and assembly will be enhanced by the freedom of group association to advocate different points of view. *See, e.g., N.A.A.C.P. v. Alabama,* 357 U.S. 449, 460–62 (1958). The constitutional basis for the freedom of association appears to be several constitutional guarantees, including the various rights of free speech, free press, petition, assembly, and voting. *State ex rel. LaFollette v. Democratic Party,* 93 Wis. 2d 473, 481 n. 4, 287 N.W.2d 519 (1980).

Weber argues in his brief that the police surveillance, in conjunction with the public disclosure of the surveillance, has deprived him of his first amendment associational rights and the associational privacy attendant with freedom of association. *See, e.g., Griswold,* 381 U.S. at 483 ("[T]he First Amendment has a penumbra where privacy is protected from governmental intrusion."). He claims that the court of appeals failed to liberally construe his claim of first amendment deprivation.

To support his first amendment deprivation claim, Weber cites *Philadelphia Yrly. Meet. Rel. Soc. of Friends v. Tate,* 519 F.2d 1335 (3rd Cir. 1975). In *Tate,* the City of Philadelphia Police Department conducted surveillance activities on the plaintiff groups at their public assemblies and demonstrations. The police department also publicly disclosed over television that it maintained dossiers on the members of the various groups.

The Third Circuit Court of Appeals, in reviewing the dismissal order based on a failure to state a claim, determined that mere police surveillance of the groups at public gatherings, without more, was legally unobjectionable. Such activity "creates at best a so-called subjective chill [on First Amendment rights] which the Supreme Court has said is not a substitute for a claim of specific present harm or a threat of specific future harm." *Id.* at 1337–38. *See, Laird v. Tatum,* 408 U.S. 1 (1972). However, the Court concluded that the public disclosure by the police that the police department kept files on members of dissident political organizations chilled the members' associational privacy rights and freedom of speech because it discouraged membership in such organizations and because the disclosure could result in private reprisals against the individual members. *Tate,* 519 F.2d at 1338–39.

Weber analogizes that the element of public disclosure of surveillance in addition to the otherwise unwarranted police surveillance must result in the same finding of sufficient allegation of associational deprivation as was found in *Tate.* We disagree. Even under a liberal construction of his pleadings, Weber does not allege the existence of a protected group or association. He merely claims that people will not associate with him

69

because of the alleged defamatory remarks that he was a suspected drug dealer and user. Any deprivation he sustained would be to his personal associations, which are not characterized by common interest of membership. The missing allegation in Weber's claim is the existence of a protected group. The allegations lack any intimation that any of his speech-like activities were discouraged either by the surveillance or by the accusations of his engaging in criminal drug activities.

Weber's first amendment right of freedom of association in groups exercising the freedoms of speech and assemblage are not implicated by his complaint. He does not allege any deprivation of the rights of free speech, free press, petition, assembly, or voting, which serve as the basis for freedom of association under the first amendment. *La Follette*, 93 Wis. 2d at 481 n. 4. Weber has not alleged any cognizable first amendment deprivations.

The fourteenth amendment provides that no "State shall deprive any person of life, liberty, or property, without due process of law. . . ." Weber essentially presents two arguments for the proposition that his liberty interests were deprived. First, he cites *Richards v. Thurston*, 424 F.2d 1281 (1st Cir. 1970), in support of his argument that the surveillance activity deprived him of his right to be let alone within a personal sphere of liberty.

*Richards* dealt with a 17–year-old student's suspension from high school for wearing long hair and for refusing to have his hair cut. The Third Circuit Court of Appeals determined that the sphere of personal liberty established by the due process clause of the fourteenth amendment encompasses the length and style of one's hair. *Id.* at 1284. It stated that the concept of

personal liberty would be incomplete if the state were allowed to interfere "with those personal aspects of our lives which have no direct bearing on the ability of others to enjoy their liberty." *Id.* at 1284–85.

Weber argues that if the due process clause creates a personal sphere of liberty for a matter as trivial as hair length in *Richards,* then such a sphere should extend to Weber's everyday activities and associations in this case.

We disagree with Weber's conclusion. First, the right to be let alone on which *Richards* relies is based on the right of every individual " 'to the possession and control of his own person. . . .' " *Id.* at 1285 (quoting *Union Pacific Railway Co. v. Botsford,* 141 U.S. 250, 251 (1891)). It is the right to control one's person which gives rise to the right to be let alone. Weber makes no allegation that he suffered interference with his person as a result of the police surveillance. Nor can a deprivation of Weber's personal liberty, as a result of the surveillance, be liberally construed from the complaint.[4] Again, all surveillance is not per se violative of constitutional rights. *Glaros,* 628 F.2d at 684.

---

[4] Counsel for Weber suggested during oral argument that Weber was unaware of the police surveillance and did not find out about it until approximately six months after it had ended. Weber's complaint alleges that because of various acts of concealment conducted by the individual defendants, Weber did not learn of the surveillance or disclosures until January 12, 1981, approximately six months after the alleged surveillance ended. We note that Weber does not allege that the police conduct interfered with his daily living pattern, which, if alleged, conceivably might give rise to a claim for violation of Weber's right to privacy subsumed in the due process clause of the fourteenth amendment.

Second, we agree with the court of appeals that a constitutional right to be left alone, as embodied in a right to personal privacy, is a narrow right. *Weber,* 125 Wis. 2d at 29. The Supreme Court in *Paul v. Davis,* 424 U.S. 693 (1976), stated,

> "[T]he personal rights found in this guarantee of personal privacy must be limited to those which are 'fundamental' or 'implicit in the concept of ordered liberty' as described in *Palko v. Connecticut,* 302 U.S. 319, 325 (1937). The activities detailed as being within this definition were ones very different from that for which respondent claims constitutional protection—matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct." *Id.* at 713.

The right to personal privacy does not include freedom from all police surveillance even when the police have no probable cause to believe the person has done something wrong. The intrusion alleged by Weber does not create a deprivation of the right of his person to be left alone. The police surveillance does not intrude into Weber's substantial, fundamental liberty rights, such as marriage, procreation, contraception, family relationships, child rearing, education, or even the length or style of his hair. His attendance at softball games and at taverns simply does not present a question of fundamental liberty where police surveillance of his attendance would establish a violation of his constitutionally protected right to privacy.

Weber's second argument for stating a claim under the fourteenth amendment is that he sustained a loss of his liberty and property interests in his reputa-

tion, business, and trade without due process of law. He alleges that he "has suffered . . . particularly in his ability to make career advancements." Weber argues that the police officers' attempts to justify their surveillance by publicly disclosing that he was a suspected drug dealer and user deprived him of the stated liberty and property interests.

Reputation by itself is neither liberty nor property within the meaning of the due process clause of the fourteenth amendment. *Paul,* 424 U.S. at 701. Therefore, injury to reputation alone is not protected by the Constitution. Defamatory statements and malicious conduct alone do not establish a constitutional deprivation for which relief may be obtained under 42 U.S.C. sec. 1983. *Christensen v. Rice,* 456 F. Supp. 419, 421–22 (E.D. Wis. 1978).

Weber attempts to circumvent the *Paul* rule that injury to reputation alone is not protected by the fourteenth amendment by alleging that he sustained an attendant loss of job advancement opportunities, thereby satisfying the "stigma plus" requirement of *Paul. See, Paul* at 699, 701, 706, 708–09. However, we need not address whether the loss of the ability to advance in one's career may constitute a liberty or property interest within the meaning of the due process clause. Rather, we find that Weber has adequate state remedies available to him for an injury to his reputation and that he failed to allege that the defamatory actions of the police officers constitute official municipal policy.

Nothing in the fourteenth amendment protects against all governmental deprivations of life, liberty, or property. Only deprivations without due process of law are protected. *Parratt v. Taylor,* 451 U.S. 527, 537

(1981). In *Enright v. Milwaukee School Directors Bd.,* 118 Wis. 2d 236, 346 N.W.2d 771 (1984), this court followed the lead of the Supreme Court in *Parratt* by acknowledging that the availability of redress afforded by a state may satisfy the procedural due process requirements of the fourteenth amendment. *Enright,* 118 Wis. 2d at 256–57. Due process does not necessarily guarantee redress against a specific entity. This is in keeping with the philosophy that the fourteenth amendment should not be transformed into "a font of tort law to be superimposed" upon a redress system already intact in the state. *Paul,* 424 U.S. at 701. The Constitution should not replace traditional tort law by laying down rules of conduct to regulate liability for injuries which "attend living together in society." *Daniels v. Williams,* — U.S. —, 106 S. Ct. 662, 666 (1986).

We held in *Enright* that an injury caused by negligence will not sustain a sec. 1983 action if a state remedy provides adequate redress. If the state has provided a tort remedy as a means of redress for the deprivation of constitutional rights, then the requirements of procedural due process—notice and an opportunity to be heard—are satisfied. *Id.,* 118 Wis. 2d at 255. For example, the wrongful death action against the Milwaukee school board extended to the *Enright* plaintiffs all the process to which they were due. *Id.* at 257.

In this case, the court of appeals considered the *Enright* rationale and held that, as applied to the intentional tort of defamation, the *Enright* decision itself would not prevent a sec. 1983 action against Cedarburg "precisely because the state fails to provide adequate relief." *Weber,* 125 Wis. 2d at 25. First, it cited sec.

893.80(4), Stats.,[5] which forecloses any state action by Weber against the city of Cedarburg because that subsection establishes municipal immunity for the intentional torts committed by its employes. Second, the court of appeals noted that a city is not liable for judgments against employes who act beyond the scope of their employment. *Id.* at 26. Based on these legal realities, the court concluded that "the state does not provide any postdeprivation remedy for Weber against the City of Cedarburg." *Id.*

The court of appeals misconstrued the scope of *Enright.* The *Enright* test is not whether the state provides an adequate postdeprivation remedy against a specific defendant—here, the city of Cedarburg; rather, the test is whether the state provides an adequate remedy to satisfy due process. We held in *Enright* that although a state remedy might not provide all of the relief which might have been available to a party under a sec. 1983 action, the state remedy may still be adequate to satisfy the requirements of due process. The relevant inquiry is whether the redress satisfies due process.

In *Hudson v. Palmer,* 468 U.S. 517, 104 S. Ct. 3194 (1984), the Supreme Court extended the holding of *Parratt* to apply to intentional torts and intentional

---

[5] This section provides in part:

"No suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes. . . ."

[6] The Supreme Court recently ruled that negligent conduct does not implicate the due process clause. *Daniels,* — U.S. —, 106 S. Ct. 662. Depending on the underlying constitutional right,

constitutional deprivation.[6] 104 S. Ct. at 3203. Thus, the intentional destruction of a prisoner's property by a prison guard without due process of law does not violate the fourteenth amendment when a state makes available a meaningful postdeprivation remedy. 104 S. Ct. at 3203.

■

We find no good reason why this jurisdiction should not adopt the rationale of *Hudson* and thereby extend our holding in *Enright.* We therefore hold that a person does not sustain a deprivation of due process of law when that person suffers a loss of a property or liberty interest as a result of an intentional tort of a state employe acting under color of law, provided that a meaningful postdeprivation remedy is available to the person.

The adequacy of the postdeprivation relief available to Weber through extant state procedure is not questioned here. Weber has pleaded, and this jurisdiction recognizes, an action based on injury to reputation. In addition, Weber complains of a violation of sec. 134.01, Stats., against the individual defendants.[7] Be-

---

"merely negligent conduct may not be enough to state a [§ 1983] claim." *Id.,* 106 S. Ct. at 664.

[7] Section 134.01, Stats., reads as follows:

"**Injury to business; restraint of will.** Any 2 or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of wilfully or maliciously injuring another in his reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500."

*See, Radue v. Dill,* 74 Wis. 2d 239, 245, 246 N.W.2d 507 (1976),

cause Weber has an adequate state remedy available to him, we find that he was not deprived of due process of law. Weber does not allege, therefore, any fourteenth amendment deprivation on which to base his sec. 1983 action.[8]

In addition, Weber fails to allege that the defamatory remarks made by the police officers constituted official municipal policy. In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978), the Supreme Court held that a local government may not be sued under sec. 1983 for an injury arising solely out of the conduct of its agents or employes.

> "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*

Here, Weber alleges that the police department had a policy or custom of conducting unjustified sur-

---

where this court said that violation of sec. 134.01 is civilly actionable.

[8] The "adequate state remedy" argument only defeats Weber's due process claim. The essential elements of a due process claim are (1) deprivation of a property or liberty interest (2) without the opportunity for a hearing or remedy. The existence of an adequate state remedy defeats the second element of a due process claim, thereby preventing a sec. 1983 action based on a matter of procedural due process of the fourteenth amendment. Other constitutional claims, however, are not based on the failure to provide due process. If a complaint sufficiently alleges a constitutional violation other than a due process violation, then the existence of a state remedy does not defeat a sec. 1983 action.

veillance, based on his conclusion that Boevers' actions "established the official policy, practices and customs of the defendant City of Cedarburg for police department matters." Weber does not claim, however, that Cedarburg or its police department had a policy or custom of defamation. Absent an allegation that the employe conduct represents official municipal policy, a municipality may not be sued under sec. 1983 for an injury inflicted solely by its employes. We decline to hold that all conduct by a police chief, including defamatory conduct, constitutes official policy of a local government. The action of the municipality which is alleged to be unconstitutional must reflect "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell,* 436 U.S. at 690. Weber's failure to allege an official policy of defamation on the part of the police department defeats his direct claim against Cedarburg with respect to his alleged loss of liberty and property interest in his reputation, business and profession.

We determine that (1) the availability of a meaningful state remedy for defamation and (2) Weber's failure to allege an official municipal policy of defamation result in Weber's failure to state a claim upon which relief may be granted for any deprivation of his fourteenth amendment due process rights. We do not have reason to decide, therefore, whether Weber's loss of career advancement opportunity allegedly resulting from the defamation presents a cognizable liberty or property interest under the due process clause of the fourteenth amendment.

## IV.

We conclude that Weber has failed to plead any deprivation of his constitutional rights; the circuit court correctly dismissed Weber's sec. 1983 claim against Cedarburg, and the court of appeals properly affirmed the judgment.

Our decision in this matter should not be construed as condoning the alleged surveillance and defamation conducted by police officers Boevers and Church, however. We only determine that, based on the allegations in the complaint, Weber's injuries do not rise to the level of constitutional deprivations actionable under 42 U.S.C. sec. 1983. We note that the dismissal of the sec. 1983 claims against Cedarburg does not affect Weber's complaint and actions against the individual defendants.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The complaint alleges that the Cedarburg police chief and police sergeant conducted police surveillance of the plaintiff, that is, continued observation of the plaintiff's public activities and collection and maintenance of publicly available information on the plaintiff, to further the purely personal interests of the chief and the plaintiff's wife. To justify their conduct the defendants publicly stated—knowing they had no basis for the assertions—that they suspected the plaintiff of using or distributing cocaine or other unlawful drugs. The plaintiff alleges that he has suffered embarrassment and damage to his reputation and career.

The majority concludes that the United States Constitution offers the plaintiff no protection. I disagree. Our Constitution does not tolerate this kind of arbitrary and malicious police surveillance and defamatory commentary. "Our Constitution is designed to maximize individual freedom within a framework of ordered liberty." *Kolender v. Lawson,* 461 U.S. 352, 357 (1983).

The fourteenth amendment ensures that each of us is free from governmental surveillance unless the government has a legitimate reason for singling out one of us for special scrutiny. In this case there was no rational basis for governmental surveillance—e.g., the plaintiff was not suspected of engaging in criminal activity or of associating with persons engaged in criminal activity.

Government officials who violate our expectation that they will not observe and record our activities— unless the government has a justifiable interest in the surveillance—contravene the fourth amendment's protection against unreasonable search and seizure, the first amendment's protection of free speech and the related right of association, and the fourteenth amendment's protection against deprivation of liberty without due process of law.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN and JUSTICE WILLIAM A. BABLITCH join in this dissent.